[Civ. No. 1649. Fourth Appellate District.—January 19, 1938.]

BURT E. CANNON, Appellant, v. GLEN W. CHAPMAN, Defendant; RIVERSIDE COUNTY PRODUCTION ASSOCIATION (a Corporation) et al., Respondents.

A. D. Mitchell for Appellant.

Kelley & Hews for Respondents.

MARKS, J.—This is a proceeding brought under the provisions of sections 549 and 689 of the Code of Civil Procedure to determine the party entitled to the proceeds arising from the sale of a crop of oranges attached by the sheriff of Riverside County while the fruit was growing on the trees. The judgment under attack was entered on September 10, 1935, so the provisions of section 689 of the Code of Civil Procedure

as amended in 1933 (Stats. 1933, chap. 744) are applicable here.

On and prior to January 10, 1935, Glen W. Chapman was owner of an orange grove upon which the crop of oranges here in question was growing. On that date he borrowed $400 from the third party claimants and executed a written agreement for repayment of the principal together with interest at five per cent per annum. As collateral security for the loan he executed a writing which recited:

"I hereby assign, transfer and deposit with the payee the following:

"As assignment of Proceeds of Sale of Mortgaged Crops dated January 10th, 1935, and Acceptance of Assignment and Subordination Agreement accepted by the Riverside Citrus Association January 11, 1935."

In another writing bearing the same date it was provided:

"That the undersigned (hereinafter referred to as 'Grower') (Chapman) does hereby sell, assign, transfer, set over, and deliver to the Riverside County Production Credit Association of Riverside, California, (hereinafter referred to as 'Credit Association'), and the Federal Intermediate Credit Bank of Berkeley, California (hereinafter referred to as 'Credit Bank'), the proceeds of sale of that certain crop of oranges produced by the Grower during the calendar year 1935-36, and delivered by the Grower to Riverside Citrus Association, (hereinafter called 'Marketing Organization') or other agencies affiliated with the said Marketing Organization, for marketing purposes, and the Grower does hereby authorize and direct the Marketing Organization to deliver the said proceeds of sale, including all refunds of prepaid freight charges and all other refunds or credits accruing in favor of the Grower as a result of the handling of said crops and/or from previous crops by the Marketing Organization or its affiliated agencies, to the Credit Association at its office in Riverside, California, and to the Credit Bank at its office in Berkeley, California."

This order was accepted in writing by the Riverside Citrus Association on the 11th day of January, 1935.

On February 14, 1935, plaintiff brought this action to recover $1650 from defendant. A writ of attachment was issued and the sheriff levied upon the crop of oranges then growing on the trees and also attached the land.

On March 16, 1935, the plaintiff and the defendant entered into a stipulation permitting the sheriff to have the Riverside Citrus Association pick, haul, pack and market the crop of oranges, the proceeds to be paid to the sheriff and held by him pending the outcome of the litigation. It was particularly agreed that these acts should not affect the rights of the parties which should be determined as they existed at the time of the attachment.

The third party claimants were not parties to this stipulation but they make no point of this fact. They filed their claim under the note and assignment. No objection is made to the form or sufficiency of the claim.

Plaintiff gave the sheriff a bond to require him to retain possession of the attached property. (Sec. 689, Code Civ. Proc.) This bond was insufficient so the sheriff delivered "said funds involved in the claim", presumably $400 and accrued interest, to the third party claimants.

Plaintiff filed his petition to have title to the property determined by the court. Findings and judgment went against plaintiff and this appeal followed.

██ The question here involved is the priority of the assignment by Chapman to the third party claimants on January 10, 1935, over the lien of the attachment made on February 15, 1935, in the suit by plaintiff. In this connection it should be observed that on a sale of a growing crop there need be no immediate and continued change of possession as required by section 3440 of the Civil Code. (*Bours* v. *Webster*, 6 Cal. 660; *Davis* v. *McFarlane*, 37 Cal. 634 [99 Am. Dec. 340]; *Globe Grain & Milling Co.* v. *Drenth*, 36 Cal. App. 156 [171 Pac. 821]; *Urick* v. *Guitron*, 15 Cal. App. (2d) 523 [59 Pac. (2d) 636].)

The factual situation involved in the case of *Curtner* v. *Lyndon*, 128 Cal. 35 [60 Pac. 462], is so similar to the situation presented here that the decision in the Curtner case must be considered as controlling.

In that case Cunningham was the owner of a ranch which he leased to Cropley under a cropping contract which reserved to the owner a certain share of the crops of hay and grain raised on part of the ranch. Judgment creditors levied upon Cunningham's interest in these growing crops. Thereafter Cunningham gave the following order which was presented to Cropley:

"Santa Cruz, Cal., May 26, 1896.

"Mr. Charles Cropley:

"You will please pay Mr. Henry Curtner the rent of the Ynigo ranch farmed by you, and oblige,

"JAMES F. CUNNINGHAM."

Curtner paid off all of the liens on the crops. Subsequently another execution was levied on what had been Cunningham's interest in the growing crops and this interest was sold by the sheriff.

In holding that at the time of the levy of the second execution, Curtner, and not Cunningham, was the owner of an interest in the growing crops, the Supreme Court said:

"Defendant raises three questions upon this appeal, and we will confine our attention to those points alone. It is first claimed that an order to pay rent cannot pass title to personal property. It is perfectly plain from the language of this order that the word 'rent', as here used, refers to Cunningham's share of the growing crops. It has often been held that an order to the debtor by the creditor to pay money to a third party operates as an equitable assignment of the debt. (*Pope* v. *Huth,* 14 Cal. 403.) Defendant's counsel in oral argument concedes that if this writing was in form an assignment to Curtner of Cunningham's interest in the crops, then the title thereto passed to Curtner. The trial court, in the light of all evidence, construed this order as having the effect of an assignment, and we will not set aside that construction. . . . As against Curtner, no right of possession gained by the sheriff after the date of Cropley's order amounted to anything, and as to any right of possession the sheriff had prior to Curtner's order, that right was wiped out by the satisfaction of all the claims by execution and attachment which the sheriff held at that time against the property."

The case of *Curtner* v. *Lyndon* has been cited with approval numerous times. See, *Donohoe-Kelly Banking Co.* v. *Southern Pac. Co.,* 138 Cal. 183 [71 Pac. 93, 94 Am. St. Rep. 28]; *Williamson* v. *Monroe,* 174 Cal. 462 [163 Pac. 662]; *Fidelity etc. Assn.* v. *Rodgers,* 180 Cal. 683 [182 Pac. 426]; *Cosby* v. *Cline,* 186 Cal. 698 [200 Pac. 801]; *Brady* v. *Ranch Min. Co.,* 7 Cal. App. 182 [94 Pac. 85]; *Title Ins. & Trust Co.* v. *Williamson,* 18 Cal. App. 324 [123 Pac. 245]; *Puterbaugh* v. *McCray,* 25 Cal. App. 469 [144 Pac. 149]; *Baumgarten* v.

*California Pac. T. & T. Co.*, 127 Cal. App. 649 [16 Pac. (2d) 332]; *Oxnard School Dist.* v. *Penn*, 132 Cal. App. 763 [23 Pac. (2d) 828].

Plaintiff urges that the order given by Chapman to the third party claimants, even though accepted by the Riverside Citrus Association, cannot be considered an assignment of the fruit growing on the trees as the assignment did not purport to convey the fruit but was an order on a fund to be created by the sale of the fruit after it was picked and marketed, which fund was not in existence at the time the order was given. This contention has been decided adversely to plaintiff in several of the cases already cited. In *Baumgarten* v. *California T. & T. Co.*, *supra*, the court said:

"However, it has been repeatedly held that where an order, such as the one at bar, is given for a valuable and adequate consideration and with the intent to effect an assignment it will as between the payee and the drawer operate as an equitable assignment taking precedence over subsequent assignments and judgment liens. (*Wheatley* v. *Strobe & Wilcoxson*, 12 Cal. 92 [73 Am. Dec. 522]; *Pierce* v. *Robinson*, 13 Cal. 116; *Pope* v. *Huth*, 14 Cal. 403; *Curtner* v. *Lyndon*, 128 Cal. 35 [60 Pac. 462]; *McIntyre* v. *Hauser*, 131 Cal. 11 [63 Pac. 69]; *Fidelity Sav. etc. Assn.* v. *Rodgers*, *supra;* *Dunlap* v. *Commercial Nat. Bank*, 50 Cal. App. 476 [195 Pac. 688].)

" 'It is immaterial that there was no fund actually in the possession of the title company at the time of the execution of the order. The subject of the assignment was not the check or any particular fund of money, but was the right of the Blackmore Investment Company to receive the sum of $18,000 upon compliance with the terms of the escrow. Money to become due at a future time upon the happening of a contingency may be the subject of an assignment. (*Pope* v. *Huth*, *supra;* *Bridge* v. *Kedon*, 163 Cal. 493 [126 Pac. 149, 43 L. R. A. (N. S.) 404]; *Smitton* v. *McCullough*, 182 Cal. 530 [189 Pac. 686]; *Bank of Yolo* v. *Bank of Woodland*, 3 Cal. App. 561 [86 Pac. 820]; *Union Collection Co.* v. *Oliver*, 23 Cal. App. 318 [137 Pac. 1082].)

" 'The order was given for valuable and adequate consideration, to-wit: the advance of $15,000 by Stewart and respondent and the satisfaction of the indebtedness of the Blackmore Investment Company to Stewart in the sum of

$1500 on account of engineering fees. An antecedent indebtedness constitutes a valuable consideration sufficient to support an equitable assignment. (*Smitton* v. *McCullough, supra.*)

" 'That the order was intended by the parties as an assignment is in accord with the evidence.' "

The construction of the order given by Chapman was a question of fact addressed, in the first instance, to the trial judge. On all of the evidence before him the trial judge concluded that it was the intention of the parties to effect an immediate assignment of the growing crop. After reviewing this evidence we cannot conclude that this conclusion was unreasonable or that it was not supported by the evidence. As said in *Curtner* v. *Lyndon, supra,* "The trial court, in the light of all evidence, construed this order as having the effect of an assignment, and we will not set aside that construction."

The judgment is affirmed.

Barnard, P. J., concurred.